**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Sudie Pinesett,

Plaintiff,

v.

Commissioner of Social Security Administration,

Defendant.

No. CV-25-00519-TUC-AMM (MAA)

**ORDER**

On June 3, 2026, Magistrate Judge Michael A. Ambri filed a Report and Recommendation ("R&R") recommending the Court affirm the final non-disability decision of the Commissioner of Social Security ("Commissioner"). (Doc. 21.) Plaintiff filed timely objections, and the Commissioner responded. (Docs. 22–23.)

As discussed below, the Court will overrule Plaintiff's objections because the Administrative Law Judge ("ALJ") properly evaluated medical opinions from Plaintiff's treatment providers as well as Plaintiff's symptom testimony.

## I. Standard of Review

A district court need not review "a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings." *See Thomas v. Arn*, 474 U.S. 140, 149–50 (1985). If a party objects, the district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C). The district court reviews the remaining portions of the recommendation for clear error. Fed. R. Civ. P.

72(b), Advisory Committee Notes 1983 Addition. "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C). Although the district court is not required to review an issue de novo absent a proper objection, the statute "does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard." *Thomas*, 474 U.S. at 154.

## II. Brief Background[1]

On September 15, 2025, Plaintiff Sudie Pinesett filed a Complaint seeking judicial review of the Commissioner's final non-disability decision under the Social Security Act, 42 U.S.C. § 405(g). (Doc. 1.) Plaintiff applied for disability insurance benefits and supplemental security income on July 3, 2023. (Doc. 21 at 1.) She alleged disability due to stage one cancer in her lung. (*Id.*) The onset date is the day Plaintiff underwent surgery to remove her cancer on June 27, 2023. (*Id.*)

The Commissioner denied Plaintiff's application initially and upon reconsideration. (*Id.* at 2.) Plaintiff requested review before an ALJ. (*Id.*) Before the hearing with the ALJ, Plaintiff averred that she suffers from a "[h]istory of pulmonary adenocarcinoma; [d]epression; [a]nxiety; [r]ight shoulder degenerative joint disease; [c]ervical spondylosis; and [h]ypertension." (*Id.*)

At the hearing, Plaintiff testified that she previously worked as a dishwasher, and she left this job because she was "doing mostly the job by [her]self" although there were some people around who did not help. (*Id.*) She is in remission from her cancer but experiences headaches as well as pain in her legs, back, hands, and arms. (*Id.*) It is unclear if this pain is related to Plaintiff's cancer, degenerative joint disease, cervical spondylosis, or arthritis, the latter of which she first alleged at the hearing. (*Id.*)

Plaintiff further testified that she has been receiving mental health treatment for

[1] Neither party objected to the Magistrate Judge's recitation of the facts in this case. Accordingly, the Court adopts the procedural and factual history. It provides this brief background only for context.

anxiety and depression since her son passed away. (*Id.* at 2–3.) Plaintiff testified that she lives with her niece and does various household chores including cooking and cleaning. (*Id.* at 2; Doc. 12-3 at 26.) Plaintiff does not do yard work and gardening. (Doc. 21 at 2.) She can manage personal care and "spends time crocheting, watching TV, and doing puzzles." (Doc. 12-3 at 26.) Plaintiff "leaves her home sometimes twice a day and can go out alone." (*Id.*) She takes the bus because she does not drive. (*Id.*)

On February 14, 2025, the ALJ found Plaintiff was not disabled as defined in the Social Security Act, 20 C.F.R. § 404.1520(g). (*Id.* at 2.) The ALJ determined that Plaintiff has a Residual Functional Capacity ("RFC") "to perform medium work as defined in 20 C.F.R. § 404.1567(c) and § 416.967(c) except she can occasionally climb, balance, stoop, kneel, crouch, and crawl, frequently reach overhead with the right upper extremity, and occasionally be exposed to heights and moving machinery." (*Id.* at 5–6.) Therefore, the ALJ found that Plaintiff can perform her past relevant work as a dishwasher. (*Id.* at 6.) Alternatively, Plaintiff can work as a janitor, hand packager, or laundry worker. (*Id.*) In so finding, the ALJ relied on the testimony from the vocational expert Linda Pearl Tolley. (*Id.* at 3, 6.)

Using the four broad functional areas outlined in 20 C.F.R. § 404.1520a(c)(3), the ALJ further evaluated Plaintiff's asserted limitations due to her mental health conditions. (*Id.* at 7.) These functional areas include the ability to "[(1)] [u]nderstand, remember, or apply information; [(2)] interact with others; [(3)] concentrate, persist, or maintain pace; and [(4)] adapt or manage oneself." (*Id.*) The criteria ranks limitations on a five-level scale ranging from "[n]one, mild, moderate, marked, and extreme." (*Id.* (quoting 20 C.F.R. § 404.1520a(c)(4)).) Extreme limitations are incompatible with any gainful activity. (*Id.*) A limitation ranking mild or less will generally indicate the claimant's "impairment[s] is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities . . . ." (*Id.* (quoting 20 C.F.R. § 404.1520a(d)(1)).)

The ALJ found that Plaintiff has "moderate" limitations in all four functional

areas. (*Id.* at 7–8.) In making this determination, the ALJ considered Plaintiff's description of her daily activities, her mental health treatment records, and her function report. (*Id.*) The ALJ also considered medical opinion evidence from state agency reviewing psychologist Andres Kerns, Ph.D. (*Id.* at 8.) Dr. Kerns "noted treatment records show benign mental status exams" and opined that Plaintiff has "moderate" limitations in every functional area except that he concluded that Plaintiff's limitation in her ability to interact with others was only "mild." (*Id.*; Doc. 12-3 at 28.) The ALJ found Dr. Kerns' opinion was supported by the record except for his determination as to Plaintiff's "mild" limitation in her ability to interact with others, which the ALJ found "not persuasive." (Doc. 12-3 at 28.)

Finally, the ALJ considered the opinions from Plaintiff's mental health treatment providers Cynthia Lee, DNP, PMHNP-BC, and Monica Leverette, DNP, PMHNP-BC. (Doc. 21 at 6.) Lee and Leverette both concluded that Plaintiff's limitations in all four categories were "marked." (*Id.* at 9.) "They [also] opined [Plaintiff] would miss work two days or more each month, noting she continues to struggle with depressive symptoms and find housing." (Doc. 12-3 at 30.) Ultimately, the ALJ reasoned that "[t]hough somewhat supported, the opinions [from Lee and Leverette] are not persuasive as they are inconsistent with the medical evidence of record, which shows conservative treatment and good mental function on examination . . . ." (Doc. 21 at 9 (quoting Doc. 12-3 at 30).)

Recognizing her "moderate" limitations, the ALJ accommodated Plaintiff's mental health conditions by finding that "she can do work that consists of simple instructions only and can perform tasks that do not involve a specific production rate pace, such assembly line work or an hourly production quota. She can have occasional interaction with the public, coworkers, and supervisors." (Doc. 12-3 at 27.)

## III. Legal Standard

The Court may overturn an ALJ's decision to deny disability benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001)

(citing *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999)). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "If the evidence 'is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'" *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). The Court may nevertheless affirm a decision made in legal error if "the error was harmless, meaning it was inconsequential to the ultimate nondisability determination." *Id.* (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)).

## IV. Discussion

### A. Mental Health Medical Opinion Evidence

The Magistrate Judge found the ALJ properly evaluated the persuasiveness of the conflicting medical opinions regarding Plaintiff's mental health. (Doc. 21 at 9–10.) Specifically, the Magistrate Judge concluded that the ALJ adequately weighed supportability and consistency before finding Lee and Leverette's "marked" impairment opinions less persuasive. (*Id.* (citing *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (holding the revised regulations establish that supportability and consistency are the "most important" factors when weighing medical opinion evidence)).) The Magistrate Judge emphasized that the ALJ cited to specific evidence in the record including Plaintiff's conservative "medication and supportive therapy" treatment. (*Id.*; Doc. 12-3 at 28.) The Magistrate Judge observed that, while "[r]easonable minds could differ" about the severity of Plaintiff's mental health impairments, this does not amount to harmful legal error requiring reversal. (Doc. 21 at 11.)

Plaintiff argues the Magistrate Judge erred because the ALJ failed to consider the whole record when evaluating the persuasiveness of Lee and Leverette's opinions. (Doc. 22 at 3.) For example, Plaintiff argues the ALJ erroneously ignored evidence that Plaintiff was being treated for anxiety and depression beginning in August 2023 and continued to present symptoms requiring treatment through 2024, including

hospitalization for a suspected panic attack. (*Id.* at 4–5.) Plaintiff also asserts that the ALJ failed to consider that Plaintiff received special education courses in high school and that she quit her last position because she felt stressed, anxious, and depressed. (*Id.* at 5–6.)

Upon de novo review, the Court agrees that the ALJ sufficiently considered the persuasiveness of Lee and Leverette's opinions. "The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how [it] considered the supportability and consistency factors in reaching these findings." *Woods*, 32 F.4th at 792 (internal citations omitted). Supportability examines the relevant objective medical evidence and supporting explanations presented by the source. 20 C.F.R. § 404.1520c(c)(1). Consistency examines the evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

Here, the ALJ detailed her assessment of Plaintiff's mental health limitations in each "paragraph B" category, citing Plaintiff's treatment notes, daily activities, and function report. She did not disregard evidence of Plaintiff's anxiety and depression. Rather, the ALJ specifically acknowledged that Plaintiff's "treatment providers noted depressed and/or anxious mood" at her exams in December 2023, January 2024, June 2024, September 2024, and "anxious mood and poor insight" at her February 2024 exam. (Doc. 12-3 at 27.)

Nevertheless, the ALJ determined that, despite Plaintiff's "longstanding" symptoms, she repeatedly "demonstrated good function on examination," and "[t]reatment records show only a few clinical findings" including anxious and depressed mood. (*Id.* at 28.) The ALJ further explained that Plaintiff presented as "alert and fully oriented" during her treatment sessions "and had appropriate appearance, cooperative behavior, normal speech, linear thought process, normal thought content and perception, and normal judgment." (*Id.*) The ALJ also observed that Plaintiff's overall treatment was relatively conservative, primarily consisting of medication management and counseling. (*Id.*)

///

Given this record, the ALJ concluded that Lee and Leverette's opinions that Plaintiff had "marked" limitations in all four "paragraph B" categories were less persuasive. (*Id.* at 28–29.) She articulated her reasoning by explaining that, while the record "somewhat supported" these opinions, they were nonetheless inconsistent with Dr. Kern's conflicting medical opinion and other evidence including Plaintiff's history of treatment, her treatment notes over the course of two years, her function report, and her daily activities. (*Id.*) Thus, the ALJ "point[ed] to specific portions of the record that conflict with the medical opinion" when examining the supportability and consistency factors as to Lee and Leverette. *Townsend v. Comm'r of Soc. Sec. Admin.*, No. CV-21-00790-PHX-GMS, 2022 WL 3443678, at *9 (D. Ariz. Aug. 17, 2022). The fact that Plaintiff received special education courses in high school and that she quit her last position because she felt stressed, anxious, and depressed do not undermine the substantial evidence supporting the ALJ's evaluation of the medical opinions. As the Magistrate Judge explained, while the medical evidence could reasonably establish more severe mental health impairments, the standard is not whether this Court would find differently than the ALJ. This Court must uphold the ALJ's determination "[i]f the evidence 'is susceptible to more than one rational interpretation . . . .'" *Ford*, 950 F.3d at 1154 (quoting *Burch*, 400 F.3d at 679). Therefore, the Court will overrule Plaintiff's objection.

**B. Subjective Symptom Testimony**

The Magistrate Judge also found that the ALJ properly evaluated Plaintiff's symptom testimony regarding her depression and anxiety. (Doc. 21 at 11–12.) He concluded that the ALJ provided clear and convincing reasons for discounting Plaintiff's symptom testimony based on her finding that Plaintiff showed "good function on examination" including "appropriate appearance, cooperative behavior, normal speech, linear thought process, normal thought content and perception, and normal judgment." (*Id.* at 13 (quoting Doc. 15 at 13–14).) The Magistrate Judge emphasized that the ALJ did not conclude these "normal" examination findings were "inconsistent" with Plaintiff's

asserted depression and anxiety. (*Id.*) Rather, the ALJ stated that the "normal" findings were inconsistent with the extent of Plaintiff's asserted limitations. (*Id.*) In other words, the ALJ recognized that Plaintiff has limitations due to her anxiety and depression, but, because of the "normal" findings upon examination, Plaintiff's limitations do not prevent her from engaging in substantial gainful activity with the ALJ's stated accommodations. (*Id.* at 14.) Therefore, the Magistrate Judge concluded that the ALJ sufficiently "show[ed] her work" as the clear and convincing standard requires. (*Id.* (quoting *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022)).)

In her objections, Plaintiff reiterates her argument that the ALJ failed to show how "normal" mental status findings and good function during therapy sessions are "inconsistent" with Plaintiff's anxiety and depression. (Doc. 22 at 6–7.)

The Court will overrule Plaintiff's objection. As the Magistrate Judge explained, the ALJ did not conclude that Plaintiff's "normal" mental status findings during treatment were *inconsistent* with Plaintiff's limitations due to her anxiety and depression. Indeed, the RFC finding included specific accommodations for Plaintiff's mental health conditions "and related moderate 'paragraph B' limitations . . . ." (Doc. 12-3 at 27.)

Instead, the ALJ found that Plaintiff's mental status findings during treatment contradict the extent of Plaintiff's asserted limitations. The ALJ recognized that Plaintiff's "symptoms are longstanding" but found that "she has demonstrated good function on examination despite those symptoms" throughout 2023 and 2024. (Doc. 12-3 at 28.) Moreover, the ALJ relied on more than Plaintiff's normal function on examination, as explained above. Thus, the ALJ provided sufficient clear and convincing reasons for discounting the severity described in Plaintiff's symptom testimony. The Court, therefore, concludes that the ALJ's finding was not legal error and will overrule Plaintiff's objection.

## V. Conclusion

The Court has reviewed the Magistrate Judge's R&R (Doc. 21), Plaintiff's objections (Doc. 22), the Commissioner's response (Doc. 23), the briefs (Docs. 15, 19–

20), and the record. Upon a de novo review of the objected to portions of the R&R, and clear error review of the unopposed portions, the Court adopts the Magistrate Judge's recommendation to affirm the Commissioner's final non-disability decision.

Accordingly,

**IT IS ORDERED** that the Magistrate Judge's R&R is **ADOPTED**. (Doc. 21.)

**IT IS FURTHER ORDERED** that the Commissioner's final decision is **AFFIRMED**. The Clerk of Court shall docket accordingly and close this case.

Dated this 17th day of September, 2026.

Honorable Angela M. Martinez
United States District Judge